## Lisowski, etc., et vir v. Jaskiewicz et vir

*George T. Guarnieri*, for plaintiffs.

*Bruce R. Wright*, of *Moore, Panfil & James*, for defendants.

CRUMLISH, J., January 8, 1951.—In their complaint plaintiffs charged defendants with false imprisonment, malicious prosecution, the uttering of slanderous words, and civil conspiracy. Subsequently, preliminary objections to the charges of malicious prosecution, false arrest, civil conspiracy, and slanderous words uttered more than a year prior to the date of suit were sustained because all of these charges were barred by the statutes of limitations. The remaining objection, that the allegations of slander were not specific as to place, time and persons to whom published, was dismissed.

Defendants have filed a counterclaim in which they charge plaintiffs with invasion of privacy.

The matter is now before us on plaintiffs' preliminary objections to the counterclaim in which it is contended that defendants have failed to set forth any cause of action; and, further, that the counterclaim "is not in accordance with Pa. R. C. P. 1046 in that the alleged occurrences did not arise out of the same transactions or occurence or series of transactions or occurrences from which plaintiffs' cause of action arose".

## The Right of Privacy

The specific acts which defendants claim have invaded their privacy occurred between September 23, 1946, and June 21, 1950. Defendants classify them as follows:

1. Five times a week wife plaintiff from the window of her house called defendants abusive names and made offensive gestures.

2. About 12 times a year wife plaintiff shouted from her yard insults, threats, and lies so that the neighbors could hear.

3. Between May 1948 and June 1950 wife plaintiff, "on numerous occasions", in conversations with neighbors told lies about defendants.

4. About five times a week wife plaintiff pounded on the party wall and swept dust into defendants' yard.

5. On February 19, 1950, about 3:10 p.m., wife plaintiff called defendant husband an obscene name, made an offensive gesture, and threw two milk bottles at him. Defendant was not hit by the bottles.

It must be observed at this point that none of the specific acts complained of are attributed to husband plaintiff, but defendants aver that he has "at all times been aware of the malicious intent" of wife plaintiff "to invade the privacy of defendants and has acquiesced and participated in the same". This allegation alone does not state a cause of action as to husband plaintiff. ". . . a married woman is liable for her

torts . . . and the joinder of her husband is not necessary or even proper": Crouse et al. v. Lubin, 260 Pa. 329, 333-334 (1918). Defendants' allegations of acquiescence and participation by the husband are not enough.

"A counterclaim is regarded as defendant's statement of claim . . . and the averments therein must be as certain and specific as those in a statement of claim": Dairymen's Co-operative Sales Association v. McCreary, 132 Pa. Superior Ct. 524, 527 (1938). Defendants allege that husband plaintiff "was aware of the malicious intent" of wife plaintiff and "acquiesced and participated" in the same. The strongest interpretation that can be given this language is that husband plaintiff participated in his wife's *intent* to invade defendants' privacy. Intent without any overt acts is not a tort of any kind. As to husband plaintiff, therefore, the counterclaim states no cause of action.

To be determined is whether, as defendants assert, the conduct of wife plaintiff summarized above, "a relentless campaign . . . to annoy and disturb the defendants", amounts to an invasion of defendants' right of privacy. Defendants claim that by reason of the wife plaintiff's conduct they have "suffered physical injury and damage, nervousness, embarrassment and mental anguish in that they are unable to live at peace in their own home nor set foot outside their door without being subjected to the malicious attacks of plaintiffs; and furthermore, . . . plaintiffs have so annoyed and insulted the friends and family of defendants that defendants have been deprived of any normal associations with . . . friends and family at the home of defendants".

In 1890 when Messrs. Warren and Brandeis wrote "The Right to Privacy", 4 Harvard Law Review 193, they concluded:

"The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others. . . . This right is wholly independent of the material on which, or the means by which, the thought, sentiment, or emotion is expressed. . . . (pages 198-99)

". . . the decisions indicate a general right to privacy for thoughts, emotions, and sensations . . . whether expressed in writing, or in conduct, in conversation, in attitudes, or in facial expression." (page 206)

Sixty years later the New Jersey court in McGovern v. Van Riper et al., 137 N. J. Eq. 24, 32 (1945), defined the right as:

"The right of an individual to be free from unwarranted publicity, or, in other words, to be protected from any wrongful intrusion into his private life which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. . . ."

The A. L. I. Restatement of the Law of Torts §867 reads:

"A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other."

Comment D of this section adds:

". . . liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues. These limits are exceeded where intimate details of the life of one who has never manifested a desire to have publicity are exposed to the public, or where photographs of a person in an embarrassing pose are surreptitiously taken and published."

In Harlow et ux. v. Buno Co., Inc., 36 D. & C. 101, 103, 105 (1939), our Brother Alessandroni concluded:

"The true nature of the right . . . is one which is closely akin to the rights of personal security and personal liberty and is derived from the natural law . . .

". . . It is likewise apparent that the invasion of this right requires a direct trespass, the necessary element of which is intent."

Chief Justice Maxey in the concurring opinion in Waring v. WDAS, 327 Pa. 433 (1937), said, at pages 462-63:

"The phrase, 'the right to privacy', is one that is easily misunderstood; . . . It is not a protection only of those who 'seek privacy', in the usual sense of that word. One who comes into equity demanding protection of his right to privacy is not preliminarily required to show that he has tried to live the life of a recluse and to 'hide his light under a bushel'. The 'right to privacy' is . . . best illustrated in those cases where letter-writers who objected to having them broadcast, where those who objected to having their photographs copied, and where those who objected to having their telephone wires tapped, have severally sought and obtained equity's protection against such invasions of their 'right to privacy'."

The foregoing limit, despite the looseness with which the term is sometimes used, the right to privacy to the right not to have one's feelings outraged by suffering the humiliation and chagrin resulting from the unauthorized holding up to public view the intimate details of one's life.

The right to privacy is the right which one enjoys in that which is peculiar to himself or his efforts and which he desires to withhold from public gaze; the violation thereof is the exposing to public view with consequential mental anguish to the injured party.

The conduct of which complaint is made here comes closest in nature to the insulting language and offensive actions found in the cases holding such conduct actionable where there exists a contractual relationship, express or implied. Liability has been found when the conduct or language was that of an employe of a common carrier, collection agency, and telegraph company; an hotel keeper, a proprietor of an amusement park, an insurance adjuster, a theatre owner, creditor, a landlord, and a private detective./See Laurence H. Eldredge, Modern Tort Problems, at pages 95-96 and 99-100; Annotation, 168 A. L. R. 446, 462 (c. *attempts to collect debts*) ; Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033, 1051-1053 (1936) ; and Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Michigan Law Review 874, 880-885 (1939). But here there is no contractual relationship, and even in those cases where such relationship does exist "there is danger of getting into the realm of the trivial in this matter of insulting language. No pressing social need requires that every abusive outburst be converted into a tort; upon the contrary, it would be unfortunate if the law closed all the safety valves through which irascible tempers might legally blow off steam": Magruder, "Mental and Emotional Disturbance in the Law of Torts", supra, at page 1053.

Defendants here seek to enforce their right of privacy by an action at law. Those cases (for example, Collier v. Ernst, 46 D. & C. 1 (1942), opinion by Ervin, J., Common Pleas Court of Delaware County) where equity enjoins a nuisance which has the earmarks of an invasion of the right of privacy cannot be relied on here. Defendants ask damages in trespass. Although Pennsylvania courts will recognize privacy as a personal right and will give damages for its invasion,

the right will not be extended so that it includes any annoyance a community dweller suffers.

"The most valid objection to the protection of 'mental' interests lies in the 'wide door' which might be opened, not only to fictitious and fraudulent claims, but to litigation in the field of trivialities and mere bad manners": Prosser, Intentional Infliction of Mental Suffering: A New Tort, supra, at page 877./

The acts defendants counterclaim for are not uncommon incidents of neighborhood life. Defendants do not seek to enjoin a material interference with their property rights resulting from plaintiffs' conduct. In the absence of a fitting or better remedy, defendants rely on their trespass action. Feelings may have been hurt, sensibilities offended, and tempers aroused, but the right which defendants seek to enforce does not guarantee freedom from all these annoyances. To show an invasion of privacy, defendants should show conduct that has gone beyond the limits of human decency motivated by an intent to hold up private affairs to public view. The gist of the tort is the exploiting of another's features, feelings, expressions, and sentiments. Such exploitation does not appear in the case before us. Here is neighborhood conduct which is unpleasant, but the acts of plaintiffs are simply the manifestations of neighborly dislike—a dislike that results in a disregard of the good manners of living together. Lacking, however, is a showing that plaintiffs' actions have resulted in the publicizing of defendants' private lives or the exploiting of their personalities. Every insult one must take is not an invasion of the right of privacy./

"Quite apart from the question how far peace of mind is a good thing in itself, it would be quixotic indeed for the law to attempt a general securing of it. Against a large part of the frictions and insults and clashing of temperament incident to participation in

community life, a certain toughening of the mental hide is better protection than the law could ever be": Magruder, Mental Disturbance in the Law of Torts, supra, at page 1035.

## *Pa. R. C. P. 1046*

Plaintiffs object also that the counterclaim is not in conformity to Pa. R. C. P. 1046. This objection is not well taken.

Pa. R. C. P. 1046 permits "a counterclaim which arises from the same . . . occurrence . . . or series of . . . occurrences from which the plaintiff's cause of action arose". Plaintiffs' cause of action here is for malicious prosecution, false arrest, slander, and conspiracy. The counterclaim is for damages for a series of acts which might be used as a defense to plaintiffs' action. Were the only question the application of Pa. R. C. P. 1046, the counterclaim would stand: Reo Motors, Inc., v. Wolf et al., 70 D. & C. 463 (1950) (opinion by Smith, J., speaking for the Common Pleas Court of Dauphin County). The facts of the counterclaim might have been part of the line of events which gave rise to plaintiffs' action. Plaintiffs contend:

"Defendants' counterclaim for damages arising out of an alleged invasion of the right of privacy does not in any manner connect with or relate to the series of occurrences set forth in plaintiffs' complaint." Granted the counterclaim does not show whether the acts complained of are the same acts which gave rise to plaintiffs' action, were this omission the only objection to the counterclaim, it could be remedied by amendment.

Accordingly, the preliminary objection that defendants have failed to show a cause of action on the ground of violation of the right of privacy is sustained, with leave to amend the counterclaim to show a good cause of action within 20 days; otherwise, the same to be stricken from the record.